## STATE (EX REL.) JAMES P. EATON *v.* ISAAC W. FARMER.

Under the statutes of 1857 and 1858, relating to the competency of witnesses, a party may be required in a deposition to testify to all matters in issue, except disclosing the names of his witnesses and the manner of proving his case.

If the party declines to answer, because it will disclose his witnesses or the manner of proving his case, and it reasonably appears to the court that it may do so, he will not be required to state how it will have that effect, lest in doing that he be compelled to disclose the very facts which the law excuses him from stating.

A defendant is not excused from stating what may bear upon, or support, his defence, unless it will disclose his witnesses, or the manner of proving his case; and therefore in a suit against a railway conductor charging him with receiving money in the cars for the fare of passengers which he has not accounted for, he may be required to state the condition of his property at the commencement and close of his service, to be weighed with other evidence in the cause, even if it be alleged that this is part of his defense.

If the court can see that his answers may supply some link in a chain of circumstances tending to accuse him of crime, and he declines to answer upon that ground, he will not be required to make such answer.

If a servant of a railway corporation having custody of passenger tickets that had once been sold and taken up, fraudulently abstracts them and sells them for his own use, it will be larceny of such tickets.

THIS is an application for a writ of *habeas corpus*, to bring up the body of James P. Eaton, imprisoned under the sentence of J. W. Fellows, Esq., a justice of the peace for the county of Hillsborough, for a contempt in refusing to answer certain interrogatories administered to him by said justice, in taking the deposition of said Eaton in the suit in favor of the Concord Railroad against him; he having refused to answer upon the ground that the answers would disclose the manner in which he proposed to prove his case.

The application was made in vacation, to one of the justices of this court, and after notice to the Concord Railroad of the said application, and a hearing before said justice, the proceeding was adjourned by him into this court.

*Bell*, for plaintiff.

*Morrison, Stanley & Clark*, for defendant.

BELLOWS, J. By the law of 1857, ch. 1952, parties may be witnesses, and upon being introduced upon the stand, may be examined upon all matters relevant to the issue, as other witnesses are subject to

be examined—giving, however, the adverse party the privilege of a cross examination, even if the witness be introduced by himself.

By the law of 1858, ch. 2090, the deposition of a party may be taken, but in giving it he shall not be compelled to answer any question or produce any document, the answering or producing of which would tend to criminate himself or disclose his title to any property the title whereof is not material to the trial of the action in the course of which he is interrogated, or to disclose the names of the witnesses by whom or the manner in which he proposes to prove his own case.

It will be perceived, then, that a party may be called to the stand and examined there in general, as other witnesses are ; but, in taking his deposition, he cannot be compelled to disclose his witnesses or the manner in which he proposes to prove his own case.   The object of this provision is to prevent an oppressive use of the power granted, and the idea is apparently drawn from the rules in chancery applicable to what are known as fishing bills..   In equity, where the defendant sets up in his answer a title inconsistent with that of the plaintiff, and not in privity with it, he is not bound to discover the evidence of the title under which he claims, but the plaintiff's right to discovery is limited to such material facts as relate to the plaintiff's case, and does not extend to the manner of establishing the defendant's case, or to the evidence by which he expects to prove it..   Story's Eq. Pl. 571–2, and 856–9 ; *Joy* v. *Kekewick*, 2 Ves. jr. 679, and note a ; Wigram on Discovery, p. 259, 262.

These rules are modified by the law under consideration, so that the party, when a witness, is only protected from disclosing his title to property when it is not material in the cause, leaving it to be implied that if it *be* material, he is not protected, but must answer as if on the stand.

So, in respect to the case of the party whose deposition is taken, the rule is also modified and he is only protected from disclosing the names of the witnesses by whom, and the manner in which, he proposes to prove his own case ; but is not protected from testifying to what he himself knows about it.

It will be observed that this provision applies equally to both plaintiffs and defendants, and we think it cannot admit of a serious doubt that the deposition of either may be taken to all the matters in issue between them, except disclosing the names of witnesses and the manner of proving his case.   So far as the plaintiff is concerned, it would hardly occur to any that the defendant could not take his deposition to all the material matters on which his suit is founded.   To hold otherwise would render this provision nearly nugatory.   So it must be as to the defendant, for the statute certainly makes no distinction whatever, and we perceive no substantial ground for any.   To be sure, the defence may not have been spread out upon the record, but it often consists in a simple denial of the plaintiff's claim, and if otherwise, we see no objection to an inquiry into the facts upon which rests a supposed ground of defence, provided it be kept within proper limits.

Such a deposition may have the effect of a bill of discovery, and in cases where such discovery is essential and the party is out of the juris-

diction of this court, or his attendance upon the witness stand cannot be secured, there might, without it, be a failure of justice.

On the other hand, courts will not be inclined to favor a fishing deposition any more than a fishing bill, and when it appears that the answer of a party might disclose the witnesses by whom, or the manner in which, the party proposed to prove his own case, he ought to be protected. Indeed, the court would be strongly inclined, so far as it might properly do so, to discountenance all attempts in this way to pry into the mode and manner by which the adverse party expected to make out his case.

With these and the other limitations mentioned in the statute, we see no reason to doubt that in taking the deposition of a party he may be required to answer all questions relating to the issue on either side, much the same as if he were on the stand.

A question arises how far the statement of the deponent shall be taken as proof that an answer to the interrogatories put would so disclose his witnesses or the manner of proving his case; and it has been suggested that in this respect it stands upon the same footing as answers tending to criminate the witness. How far the answers in that case must be taken, is open to some uncertainty upon the authorities, but with us it seems to be understood that if the court can see that the answer might tend to criminate the witness, and he declines upon that ground, he will be protected, and the court will not compel him to state how it will so expose him, lest in doing so he would be obliged to disclose the very fact that would tend to charge him with crime.

At the same time, the court will determine whether, under all the circumstances of the case, it reasonably appears that the answer of the witness may expose him to a criminal charge; and if the answer may bring out a fact that may form but a single link in the chain of testimony against the witness, he will be protected. *State* v. *Foster*, 23 N. H. 348; *Janvrin* v. *Scammon*, 29 N. H. 289-90; *Carter* v. *Beals*, 44 N. H. 412; 1 Greenl. Evid. sec. 451, and notes.

So, in respect to the question immediately before us, if it reasonably appears that the answer of the party will disclose the names of his witnesses and the manner of proving his case, and he states that it will do so, he ought not to be required to state fully how it will have that effect, for the same reason that is given in the other case. There is, indeed, between the two cases, a marked distinction in this, that in the one case the witness may be exposed to a criminal charge, by his own testimony unwillingly extorted from him, which is against the settled policy of the law, while in the other, the injury to him is merely of a pecuniary character alone. These considerations would probably lead to greater caution in the former case than in the latter; but we conceive the general rule applicable to both cases to be substantially the same.

In applying these rules to the case before us, it appears that the suit against James P. Eaton in favor of the Concord Railroad, is brought to recover a large amount of money alleged to have been received by him while acting as a conductor in the employment of this corporation, on the Manchester & Lawrence Railroad, during a period of several

years. It is understood that it is claimed that the defendant received money in the fares of passengers, which he failed to account for, but applied to his own use, and also received money for tickets fraudulently disposed of by him.

One class of questions which the defendant refused to answer in giving his deposition at the request of the plaintiff, upon the ground that he could not do so without disclosing the manner in which he proposed to prove his own case, was designed to draw from him a statement of the amount and character of the property possessed by him when he entered into the plaintiff's service as such conductor, and also at the end of that service; and the question is, whether there is reason to suppose that the answers to this class of interrogatories might so disclose the names of his witnesses or the manner of proving his own case.

The character of these questions suggests the position on the part of the plaintiff that during the time of the defendant's service, his property had increased to an extent that could not be accounted for through his earnings as such conductor, or the results of other business pursued by him; and we can conceive that such evidence, in connection with evidence tending to prove that he had received more money in the cars than he had accounted for, might rightfully be weighed by the jury. This is distinctly settled in *Boston & Worcester Railroad* v. *Dana*, 1 Gray Rep. 83; and therefore such evidence might properly be regarded as relating to the proof of the plaintiff's case. It is true that the defendant's position, and one branch of his defence, may be, that he has no more property than might be expected from the legitimate results of the business in which he was engaged, and that being the case, this evidence would bear upon the defence. But however this may be, whether the evidence be in support of the plaintiff's case or of the defence, the defendant will be bound to answer, so long as he is not required to disclose his witnesses, or the manner of proving his case, and we think there is no reason to suppose that his answers to these questions would have that effect within the meaning of the provision under consideration. The amount and value of his property at these different periods is, as we have seen, a proper subject of inquiry, and we are quite clear that a statement of what he possessed would not require him to disclose the names of his witnesses, or the manner of proving his case. If the title of any of such property became an object of inquiry and material in the cause, he would be bound to answer, although if a matter of defense exclusively, he would not be required to disclose the manner in which he proposed to prove it.

With these views, the deponent, Mr. Eaton, was not protected from answering the interrogatories numbered eighteen, twenty-four, twenty-nine, thirty, thirty-one, thirty-two and thirty-three, all relating to the state of his property at these different periods—some of them to the number of men in his employment and some to the debts due to and by him at the different periods. The interrogatories numbered nineteen, twenty, twenty-five and twenty-six, asking in what way the answers to numbers eighteen and twenty-four would disclose his witnesses and the manner of proving his case, were not rightfully put, if the de-

ponent had been right in declining to answer numbers eighteen and twenty-four; but as we hold he was not, it is now not material to inquire further as to those four interrogatories.

Interrogatory numbered thirty-five asks what stocks he owned November 1, 1852, and what at the present time, and what between those periods; what he paid for these, when he bought them, and when and for what he sold them. Interrogatories thirty-seven and thirty-eight ask the number of acres in his farm and what he paid per acre, and the cost of his house and barn, and when they were built. Upon the principles before suggested, these three questions were rightfully put, and the deponent was not excused from answering them. They were put to ascertain the extent and value of his property, directing his attention to particular things instead of making general inquiries. The same may be said of interrogatory numbered forty-seven, touching the ownership of a quantity of wool attached in this suit.

Our conclusion, then, is, that, for declining to answer these questions upon the ground that the answers would disclose the manner of proving the deponent's case, the attachment was properly issued, and therefore the writ of *habeas corpus* must be refused.

The deponent also declined to answer another class of interrogatories, both upon the ground above stated and because the answers would tend to criminate him. Among these interrogatories is the forty-first, asking him if he had passed persons free in the cars; and if so, who. It is clear that the answer to this question might expose him to a penalty imposed by statute, and therefore he was justified in declining to answer it.

There are other questions designed to elicit information as to the purchase and sale of tickets by him, and whether sold below regular prices, apparently supposed to be fraudulently obtained or once taken up by him and not cancelled. If the conductor had sold a ticket which had once performed its office, and had been taken up by him, the money received for it must be regarded as standing on the same ground as if received in the cars by him for the fare of a passenger, and to be accounted for to his employer. Whether the conversion of such tickets or the money received for them, to his own use, would be larceny or not, it is not necessary to inquire, for it is sufficient that it appears that proof of the sale of tickets, especially at less than regular prices, might be one link in a chain of testimony tending to prove that such tickets were stolen; and therefore his statement that it would tend to criminate him must be deemed decisive.

In regard to the sale of tickets once taken up by a conductor and not cancelled, it may be suggested that when so taken up it is the property of the railroad, and the conductor holds it in trust only, to be cancelled and returned to the office. If, instead of that, he fraudulently omits to cancel it, and sells it for his own benefit, he stands much upon the footing of a person who, by personating the conductor, obtains tickets from the passengers to sell for his own use.

If, then, the conductor takes up a ticket, intending at the time to sell it for his own benefit, and therefore omits to cancel it, and does actually

sell it, there would be strong grounds for charging him with larceny.

indeed, must be regarded as a servant of the corporation having merely a charge of such tickets and no special property in them ;—and therefore an abstraction of them and converting of them to his own use, would be larceny.   1 Hawk. P. C. 135–6 ; East's P. C. 564–70, and cases cited ; Roscoe's Cr. Evid. 599–604 ; 3 Greenl. Evid. sec. 162, and cases cited ; Wharton's Am. Cr. Law, 3d Ed. 662–664 ; *State* v. *Watson*, 41 N. H. 533.

Where a clerk or servant takes a bill of exchange belonging to his master, gets it discounted and converts the proceeds to his own use, this was held to be larceny of the bill, though the clerk had authority to discount bills.   *Chipchase's Case*, 2 East. P. C. 567, 2 Leach, 699 ; Wharton's Am. Cr. Law, 3d Ed. 664.

In *Regina* v. *Watts*, 1 Eng. Law & Eq. 558, a cancelled check which had come into the hands of the prisoner, a clerk, whose duty it was to hold it for the directors of the insurance company, was unlawfully abstracted by him, and it was held that having reached its ultimate destination, it must be deemed to be in the possession of the directors, and the act of the clerk was larceny and not embezzlement.

In the case before us, there does not appear enough to justify an opinion on this point, but we can readily see that the answers to these questions might expose the deponent to a criminal prosecution.

We are, therefore, of the opinion that he ought not to have been required to answer the interrogatories numbered forty-one to forty-six inclusive.

But, as the magistrate was right in requiring him to answer others, the application for the writ of *habeas corpus* must be denied.